**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SPRINT NEXTEL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>AT&T INC., et al.,<br><br>Defendants. | ) | Case No. 1:11-cv-01600-ESH |
| CELLULAR SOUTH, INC., et al.,<br><br>Plaintiff,<br><br>v.<br><br>AT&T INC., et al.,<br><br>Defendants. | ) | Case No. 1:11-cv-01690-ESH |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS**
**THE COMPLAINTS OF SPRINT AND CELLULAR SOUTH**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

ARGUMENT ............................................................................................................3

I. SPRINT AND CELLULAR SOUTH LACK STANDING AS COMPETITORS TO CHALLENGE A HORIZONTAL MERGER OF WIRELESS SERVICE PROVIDERS ....................................3

II. SPRINT AND CELLULAR SOUTH LACK STANDING TO CHALLENGE THE MERGER ON THE BASIS OF ANY ANTICOMPETITIVE EFFECTS IN VERTICAL MARKETS BECAUSE THEY FAIL TO ALLEGE PLAUSIBLE ANTITRUST INJURY IN ANY OF THOSE MARKETS ....................................6

A. Plaintiffs Do Not Plausibly Allege That They Will Be Foreclosed from Purchasing Wireless Devices ....................................7

B. Plaintiffs Lack Standing Because They Fail To Plead Facts Defining a Market for Roaming and Cannot Identify a Plausible Injury That They Will Suffer in That Market As a Result of the Transaction ....................................10

C. Sprint Fails To Allege That Any Anticompetitive Aspect of the Merger Could Plausibly Cause an Increase in Sprint's Costs for Backhaul ....................................13

D. Plaintiffs' Other Suggestions of Vertical Market Injury Are Too Vague To State a Claim ....................................17

CONCLUSION ........................................................................................................17

## TABLE OF AUTHORITIES

Page

CASES

* *Alberta Gas Chems. Ltd. v. E.I. Du Pont de Nemours & Co.*, 826 F.2d 1235 (3d Cir. 1987) ....................14

*Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178 (3d Cir. 1997) ............10, 14

* *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................6, 7, 8, 16, 17

*Bon-Ton Stores, Inc. v. May Dep't Stores Co.*, 881 F. Supp. 860 (W.D.N.Y. 1994) ....................12

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) ....................14

* *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ....................1, 5, 8, 10, 15

* *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986)....................1, 3, 5, 7, 8, 10, 14

*Cellco P'ship v. FCC*, 357 F.3d 88 (D.C. Cir. 2004)....................8

*City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256 (3d Cir. 1998) ....................15

*Community Publishers, Inc. v. Donrey Corp.*, 892 F. Supp. 1146 (W.D. Ark. 1995), *aff'd*, 139 F.3d 1180 (8th Cir. 1998) ....................1, 4, 10

*Conwood Co. v. United States Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002)....................9

*Coors Brewing Co. v. Miller Brewing Co.*, 889 F. Supp. 1394 (D. Colo. 1995)....................7

*Cox Enters., Inc., In re*, No. 09-ML-2048-C, 2010 WL 5136047 (W.D. Okla. Jan. 19, 2010) ....................13

*Downs v. Insight Communications Co.*, No. 3:09-CV-00093, 2011 WL 1100456 (W.D. Ky. Mar. 22, 2011)....................13

*Ford Motor Co. v. United States*, 405 U.S. 562 (1972)....................16, 17

*FTC v. H.J. Heinz Co.*, 246 F.3d 708 (D.C. Cir. 2001) ....................16

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007) ....................7

*Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182 (D.D.C. 2001)....................8

* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)....................1, 4, 5

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007) .......... 6, 16

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117 (2d Cir. 2007) .......... 7

*S.O. Textiles Co. v. A & E Prods. Group, a Div. of Carlisle Plastics, Inc.*, 18 F. Supp. 2d 232 (E.D.N.Y. 1998) .......... 6

*Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, No. 97 Civ. 5499(DNE), 2000 WL 264295 (S.D.N.Y. Mar. 9, 2000) .......... 12

*Tasty Baking Co. v. Ralston Purina, Inc.*, 653 F. Supp. 1250 (E.D. Pa. 1987) .......... 9

* *United States v. SunGard Data Sys., Inc.*, 172 F. Supp. 2d 172 (D.D.C. 2001) .......... 11

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) .......... 13, 15

STATUTES

Clayton Act, 15 U.S.C. § 12 *et seq.* .......... 2, 3, 5, 7, 14

§ 4, 15 U.S.C. § 15 .......... 14

§ 7, 15 U.S.C. § 18 .......... 2, 6, 7, 14, 16

§ 16, 15 U.S.C. § 26 .......... 2, 3, 5, 14

Sherman Act, 15 U.S.C. § 1 *et seq.* .......... 2

OTHER MATERIALS

2A Phillip E. Areeda et al., *Antitrust Law* (3d ed. 2007) .......... 12

Jonathan M. Jacobson & Tracy Greer, *Twenty-One Years of Antitrust Injury: Down the Alley with* Brunswick v. Pueblo Bowl-O-Mat, 66 Antitrust L.J. 273 (1998) .......... 11

U.S. Dep't of Justice & Fed. Trade Comm'n, *Horizontal Merger Guidelines* (2010) .......... 12

## INTRODUCTION

Plaintiffs Sprint and Cellular South correctly note that "the law is well-established as to what must be pled . . . to warrant competitor standing under Section 16 of the Clayton Act." Joint Opp. 10. A competitor may not simply claim that increased concentration from a horizontal merger will lead to higher prices in the market in which it competes with the merging parties. That alleged impact would benefit, not harm, direct competitors such as Plaintiffs. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83 (1986). Plaintiffs cite but a single case, *Community Publishers, Inc. v. Donrey Corp.*, 892 F. Supp. 1146, 1166 (W.D. Ark. 1995), *aff'd*, 139 F.3d 1180 (8th Cir. 1998), in which a potential price *increase* was found to threaten harm to direct competitors. But that case depended on alleged facts about a particular market for newspaper advertising that have no counterpart in the complaints here. *See* pp. 4, 10 n.7, *infra*.

Nor of course may Plaintiffs complain about increased competition. The increased efficiency of a rival resulting from a merger might well harm Plaintiffs, but it is not a harm cognizable under the antitrust laws. *See Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 115-17 (1986); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 427 U.S. 477, 489 (1977). Thus, regardless of whether Plaintiffs and the United States are correct (that the merger will lead to reduced output and increased prices for wireless services), or Defendants are correct (that the merger will alleviate capacity constraints and produce a more efficient and effective competitor), Plaintiffs have no antitrust standing. What they repeatedly call the "core" of their case – which mimics the horizontal case brought by the Department of Justice – must accordingly be dismissed.

To circumvent these "well-established" principles, Plaintiffs also attempt to allege (as the Department of Justice does not) that they are harmed as a result of the merger's effects on certain vertical markets. Specifically, they claim that, by raising the costs of certain inputs – wireless devices, roaming, and dedicated fixed transport or "backhaul" – the merger will harm Plaintiffs in a manner that will also harm consumers of wireless services. That theory of competitor harm is at least cognizable under the antitrust laws. But those aspects of Plaintiffs' complaints must still be dismissed because Plaintiffs fail plausibly to allege that the merger threatens a substantial effect on a properly defined input market. That is not because Plaintiffs are required to plead a violation of the Sherman Act, but because antitrust injury and standing are essential requirements under § 16 of the Clayton Act, including for claims under § 7 of that Act. In the absence of legally sufficient allegations of direct harm within such a properly defined vertical market, there can be no basis for concern about indirect effects in the wireless service market and no basis for injunctive relief.

Plaintiffs fail to allege any such competitive harm. With regard to wireless devices, the complaints fail either to allege a proper market or to plead other factual allegations that would provide a plausible basis for concern that the transaction will materially impede Plaintiffs' access to wireless devices. The mere possibility of exclusive arrangements between the merged firm and handset manufacturers cannot establish such harm. Exclusive arrangements are accepted as intensifying interbrand competition among handset manufacturers, so long as there are ample substitutes, and there is (and can be) no allegation here that such substitutes are lacking.

With respect to roaming, Plaintiffs fail to allege even the existence of a market for roaming services that would allow the Court to infer that the merger will cause harm to Plaintiffs. Sprint (exclusively) and Cellular South (almost exclusively) depend on roaming

services that the merging firms do *not* provide. And even with regard to the few Cellular South customers who allegedly roam on AT&T's network, Cellular South alleges nothing about its current roaming arrangements – including the term of such arrangements, whether such arrangements are reciprocal, and whether Cellular South is a net buyer or seller of roaming services – that would permit any inference of harm. Nor do Plaintiffs explain – in light of FCC regulations guaranteeing access to roaming at reasonable rates – how a combined AT&T and T-Mobile could cause any competitive harm.

With respect to backhaul, Sprint fails to allege the facts that would provide any plausible basis for the counterintuitive claim that the (supposed) elimination of an unaffiliated *buyer* of backhaul would lead to an increase in the prices charged for such services. Sprint speculates that the elimination of T-Mobile could lead, down the road, to the exit of certain (unidentified) independent suppliers, but its complaint provides no basis for that conclusory assertion. Sprint has raised these concerns at the FCC, and that agency has adequate regulatory means at its disposal to address any legitimate concerns about the prices of access services. Sprint's speculative and attenuated claims cannot establish an injury sufficient to establish standing.

## ARGUMENT

### I. SPRINT AND CELLULAR SOUTH LACK STANDING AS COMPETITORS TO CHALLENGE A HORIZONTAL MERGER OF WIRELESS SERVICE PROVIDERS

As competitors in the alleged market for wireless services, Plaintiffs cannot allege standing under § 16 of the Clayton Act based on any alleged impact on market prices from the increase in concentration in the market that they claim will result from the merger. *See Cargill*, 479 U.S. at 113. Plaintiffs purport to acknowledge that they cannot "complain[ ] of higher prices" for wireless services, Joint Opp. 36 n.17, but they nevertheless argue at length that they

"have standing to challenge the merger's harm to competition in the wireless markets," *id.* at 13. Indeed, Plaintiffs represented to the Court that, "at its core," their case is "the exact same case" as the one brought by the United States, 9/21/11 Tr. 30, and the United States' claim is that the merger allegedly will result in "higher prices" for "customers of mobile wireless telecommunications services," U.S. 2d Am. Compl. ¶ 3. But Plaintiffs cannot distinguish *Matsushita Electric*, where the Supreme Court squarely recognized that a competitor suffers no injury from higher prices or other conduct that has "the effect of either raising market price or limiting output." *Matsushita Elec.*, 475 U.S. at 583. Such conduct "actually *benefit[s]* competitors by making supracompetitive pricing more attractive." *Id.* Plaintiffs' purported concerns about an alleged "AT&T and Verizon duopoly" that would allegedly "raise prices" for wireless services to consumers, Joint Opp. 3, 9-10, only confirm their reliance on an untenable theory of injury. *See* Defs.' Sprint Mem. 9-10.

*Community Publishers* is the only case that Plaintiffs cite in which a court credited the claim that an increase in prices would harm a horizontal competitor, and that decision was based on factual allegations that have no counterpart here. There, the plaintiff alleged that the merged entity – a newspaper company – would be so large as to constitute "a 'must buy' for regional advertisers," enabling the combined firm to raise advertising rates and thereby "soak up all the available advertising revenue," leaving nothing for the plaintiff. 892 F. Supp. at 1165, 1166. Defendants have already shown why Plaintiffs cannot allege any comparable effect here, *see* Defs.' Sprint Mem. 10, and Plaintiffs make no effort to explain why the case supports their claims nevertheless.

Likewise, although Plaintiffs disclaim any intention to base standing on increased competition from the merged firm, *see* Joint Opp. 35, they maintain that, as a result of the

merger, Sprint supposedly will be "marginalized and no longer able to constrain prices," *id.* at 3; *see* Sprint Compl. ¶ 4. Plaintiffs never explain what they mean by "marginalized," and such a suggested impact is so vague as to be meaningless. Insofar as they mean that they may have difficulty competing against the merged entity on price and quality of services, their claim is no different from the ones rejected in *Cargill* and *Brunswick*. As those cases demonstrate, injury resulting from the intensification of competition in horizontal markets is not *antitrust* injury – that is, it is not an injury flowing from a reduction in competition. *See Cargill*, 479 U.S. at 115-17; *Brunswick*, 429 U.S. at 489; Defs.' Sprint Mem. 7-9.[1]

Contrary to Plaintiffs' assertion, it does not "violate the Rule 12(b)(6) standard," Joint Opp. 11, to recognize that Plaintiffs lack standing under *Cargill*, *Brunswick*, and *Matsushita Electric* to challenge this merger based on alleged anticompetitive effects in the wireless markets in which they compete with Defendants. The Court need not credit as true any "assert[ed] procompetitive effects of the transaction" or any of Plaintiffs' various inconsistent representations to Defendants, the media, or the FCC. *Id.* at 12.[2] Instead, it need only follow the

[1] Plaintiffs acknowledge that predatory pricing is the only type of anticompetitive conduct that the Supreme Court has suggested could provide a basis for competitor standing under § 16 of the Clayton Act. *See* Joint Opp. 15-16; Defs.' Sprint Mem. 8 n.3. They also do not dispute that they have not alleged that the merged firm will engage in predatory pricing.

[2] Plaintiffs complain in particular about Defendants' reference to an e-mail sent by the President and CEO of Cellular South to the President and CEO of AT&T Mobility regarding the transaction. *See* Defs.' Cellular South Mem. 1-2; Joint Opp. 12-13. Defendants do not rely on that e-mail as the basis for their motions to dismiss. The document illustrates, however, why courts are justifiably wary of competitors' attempts to block rivals' mergers based on allegations that transactions will harm competition. Moreover, the terms of the proposal (the authenticity of which is undisputed) speak for themselves: "[Cellular South] will build, operate and own an LTE network in the entire state of Mississippi and any other area in the southeast that AT[&]T desires. Accordingly, [Cellular South] will provide network services to AT[&]T via [an] attractive [resale] arrangement in areas in which it builds." Defs.' Cellular South Mot., Exh. A. The meaning of the e-mail is plain: If AT&T will defer to Cellular South to maintain a facilities-based LTE network in Mississippi and agree to resell Cellular South's service, Cellular South's "issues" regarding the merger will be "alleviat[ed]." *Id.* That is not "an uninformed

Supreme Court's binding decisions, which make clear that a competitor lacks standing to challenge a merger based on fears that the combined entity either will "raise prices post-merger," *id.* at 16, or will be a more formidable competitor.

## II. SPRINT AND CELLULAR SOUTH LACK STANDING TO CHALLENGE THE MERGER ON THE BASIS OF ANY ANTICOMPETITIVE EFFECTS IN VERTICAL MARKETS BECAUSE THEY FAIL TO ALLEGE PLAUSIBLE ANTITRUST INJURY IN ANY OF THOSE MARKETS

Defendants do not contend, as Plaintiffs suggest, that competitors never have standing to challenge a merger of rivals. To plead antitrust injury in a § 7 action, however, a competitor must allege harm to itself resulting from the transaction that is of a type the antitrust laws were designed to prevent and do so in a way that satisfies applicable pleading standards. That generally means that a competitor must plausibly allege facts showing that, as a result of vertical effects of a merger, it will be excluded from the market or deprived of access to an input that is critical to competing. *See* Defs.' Sprint Mem. 11. Here, Plaintiffs have attempted to allege various ways in which the transaction could affect their access to needed inputs – allegations notably absent from the United States' complaint in this matter. But Plaintiffs' complaints fail to plead facts sufficient to state a plausible claim that the transaction threatens any substantial effect on competition in any properly defined vertical market. *See S.O. Textiles Co. v. A & E Prods. Group, a Div. of Carlisle Plastics, Inc.*, 18 F. Supp. 2d 232, 243 (E.D.N.Y. 1998) (to establish antitrust injury for purposes of § 7 claim, plaintiff must allege not only an "injury to its own business," but also "facts . . . from which an injury to competition in the market as a whole can be inferred"). Thus, they fail to plead "enough facts to state a claim [of standing] that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007) (en banc) (*Twombly*'s pleading standard

---

interpretation of the email compounded by overly enthusiastic advocacy." Cellular South Mem. ISO Mot. To Strike 3. That is what the e-mail says.

applies to the antitrust injury element of antitrust standing); *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (same).[3] Plaintiffs' contrary arguments (Joint Opp. 25-45) do not and cannot supply the market-based allegations that would support their conclusory assertions of harm.

### A. Plaintiffs Do Not Plausibly Allege That They Will Be Foreclosed from Purchasing Wireless Devices

**1.** Plaintiffs' allegations that the transaction " 'would enable both AT&T and Verizon to coerce exclusionary handset deals' " from device manufacturers, Joint Opp. 26 (quoting Sprint Compl. ¶ 160), fail to establish standing because the complaints lack allegations that such exclusive deals could possibly inflict market-wide harm that would also harm Plaintiffs. As a general rule, exclusive distribution arrangements enhance interbrand competition by intensifying distributors' promotional efforts and the competitive responses of competing manufacturers and distributors. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 890 (2007); Defs.' Sprint Mem. 20.[4] Plaintiffs fail to allege anything about the market for wireless devices to support their assertion that the effect in this case will be any different.

---

[3] Plaintiffs repeated references to an "incipiency" standard, *e.g.*, Joint Opp. 4, do not help their case because *Cargill*'s standard, on which Defendants' motions are based, already reflects the forward-looking nature of § 7 of the Clayton Act by allowing a plaintiff to establish antitrust injury based on allegations of "threatened loss or damage." 479 U.S. at 113. That does not relieve Plaintiffs of their obligation under *Twombly* to allege facts supporting a plausible theory of antitrust injury; to the extent Plaintiffs' pre-*Twombly* cases allowed competitor suits to proceed past the pleading stage based on some lesser showing, they are not good law. *See, e.g.*, *Coors Brewing Co. v. Miller Brewing Co.*, 889 F. Supp. 1394, 1402 & n.17 (D. Colo. 1995) (suggesting that plaintiff was "entitled to conduct discovery" to see if it could "marshal[ ] the necessary facts" to "develop a theory of antitrust injury") (internal quotation marks omitted), *cited in* Joint Opp. 16, 18, 23-24.

[4] To the extent Plaintiffs limit their claim to the allegation that the merger will reduce their access to the "leading," "most popular," "cutting-edge," or "iconic" handsets, Joint Opp. 27; Cellular South Compl. ¶ 62 (internal quotation marks omitted); Sprint Compl. ¶¶ 3-4, they fail even to allege that there exists a relevant market for "leading" handsets in which they will be foreclosed from competing.

Plaintiffs seek to avoid the law on exclusive arrangements by arguing that they "are not bringing a Sherman Act claim challenging a particular handset arrangement." Joint Opp. 28.[5] But Plaintiffs must plausibly allege that they face "threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Cargill*, 479 U.S. at 113 (quoting *Brunswick*, 429 U.S. at 489); *see* Joint Opp. 14 (articulating same standard). Exclusive handset deals cannot threaten the kind of harm contemplated in *Cargill* when they do not foreclose competitors such as Plaintiffs from alternative handsets. *See* Defs.' Sprint Mem. 21.

Plaintiffs simply have not alleged the factual predicate for the conclusion that any such foreclosure is threatened here. They do not allege anything about the nature of the market for wireless devices, much less the degree of foreclosure that exclusive dealing arrangements might achieve. This Court may take judicial notice that the FCC has found that the marketplace for wireless devices includes dozens of competitors selling hundreds of devices. *See id.* at 21-22; Joint Opp. 11 (admitting that Court can consider "matters of which courts may take judicial notice" in ruling on Defendants' motions) (internal quotation marks omitted); *Cellco P'ship v. FCC*, 357 F.3d 88, 96 (D.C. Cir. 2004) (taking judicial notice of FCC report); *see also Twombly*, 550 U.S. at 568 (analyzing an antitrust complaint at the motion to dismiss stage in light of the surrounding competitive atmosphere, even though those background facts extended beyond the four corners of the complaint).[6] Those agency findings highlight the importance of requiring, at

---

[5] Plaintiffs' repeated protests that their claims should not be judged under ordinarily applicable standards only confirm their speculative and insubstantial nature.

[6] The Court may also take judicial notice of Sprint's defense of exclusive handset arrangements in FCC filings. *See* Defs.' Sprint Mem. 20 & n.12; *Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 186 (D.D.C. 2001) (taking judicial notice of documents filed by carrier with FCC). Plaintiffs do not dispute the authenticity of those statements. *See* Joint Opp. 12 n.8.

the outset, allegations that would support the assertion that competition in some (undefined) market for wireless devices is threatened in a way that harms Plaintiffs.

*Tasty Baking Co. v. Ralston Purina, Inc.*, 653 F. Supp. 1250 (E.D. Pa. 1987), does not support Plaintiffs because, in that case, the court credited allegations that the merged firm would deny the plaintiffs access to retail outlets, which would in turn harm "their entry into, expansion within, and preservation of share in relevant markets." *Id.* at 1273. To the extent a dominant manufacturer can foreclose or limit access to necessary distribution, a competitor may face a threat of harm. *Cf. Conwood Co. v. United States Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002) (finding unlawful monopolization where defendant successfully limited competitor's access to retail distribution). Here, by contrast, Plaintiffs must allege that the merger will result in manufacturers losing interest in sources of distribution apart from the merged firm (and, presumably, Verizon). But that claim is affirmatively implausible: so long as competition at the level of device manufacturing is robust, manufacturers will be driven to identify effective means for distribution of their products. Sprint and Cellular South do not and cannot allege that the merger poses anything like a threat to worldwide competition among handset manufacturers, and they accordingly cannot allege antitrust injury on that basis.

**2.** Sprint also claims that the merger will prevent it from "ally[ing] with T-Mobile to create substantial scale for the creation of new handsets." Sprint Compl. ¶ 161; *see* Joint Opp. 29. Sprint does not, however, allege *any* instance in which Sprint and T-Mobile "allied" to create substantial scale for the creation of a new handset. Rather, the sole factual support for its claim is the allegation that both Sprint and T-Mobile were members of an industry alliance that "was responsible for developing the Android mobile device platform." Sprint Compl. ¶ 90. But

Sprint fails to allege either that that alliance will cease to exist as a result of the merger,[7] or that Sprint will be unable to cooperate with other carriers in the development of new handsets, or that the acquisition of T-Mobile will affect in any way the competitiveness of or innovation in the upstream device market.

### B. Plaintiffs Lack Standing Because They Fail To Plead Facts Defining a Market for Roaming and Cannot Identify a Plausible Injury That They Will Suffer in That Market As a Result of the Transaction

**1.** At the outset, Plaintiffs cannot establish standing based on the transaction's alleged effect on the availability of roaming services because they have failed to plead facts regarding any supposed market for roaming services, including anything about the terms or conditions under which Plaintiffs currently purchase or sell roaming services. Plaintiffs' allegations thus fail to show that the merger threatens a reduction in competition that could affect either company. *See* Defs.' Sprint Mem. 17.

Plaintiffs argue that defining a relevant market is unnecessary and assert that Defendants would require them to allege "independent Sherman Act violations." Joint Opp. 36. But Plaintiffs are required to define the market and market-wide effects to establish antitrust injury – i.e., "threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.' " *Cargill*, 479 U.S. at 113 (quoting *Brunswick*, 429 U.S. at 489). Whether Plaintiffs face antitrust injury because of the alleged impact of the transaction on roaming services depends on whether the transaction will create market-wide harm. *See Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 182 (3d Cir. 1997) (antitrust injury "depends on how th[e] market is defined"). Plaintiffs cannot plausibly allege that their "access to roaming" will be "disrupt[ed]" without alleging any facts

[7] That differentiates this case from *Community Publishers*, where the merged entity had the unilateral ability to terminate the sharing arrangement for news and advertising that existed between the acquired company and the plaintiff. *See* 892 F. Supp. at 1166-67.

about the market or markets for roaming services. *Cf. United States v. SunGard Data Sys., Inc.*, 172 F. Supp. 2d 172, 182 (D.D.C. 2001) (dismissing government's merger challenge for failure properly to allege a product market in which competitive harm may occur).[8]

**2.** In any event, Sprint's allegations that the transaction will affect its access to roaming are implausible on their face, because Sprint admittedly "cannot purchase roaming from AT&T." Joint Opp. 30; *see* Defs.' Sprint Mem. 18-19. Sprint seeks to avoid that dispositive fact by speculating that, after the merger, AT&T will increase retail wireless service rates and that Verizon "would have the incentive to increase its retail prices and also to raise its roaming rates to CDMA carriers" as a result. Joint Opp. 30 (citing Sprint Compl. ¶ 185). But Sprint never even attempts to explain how the transaction would increase Verizon's ability and incentive to use roaming fees to insulate itself from competition by *other CDMA carriers*. In addition, Sprint fails to allege other essential elements of its highly speculative theory of harm, including, *inter alia*, allegations regarding any roaming arrangement that Sprint may have with Verizon (including even whether Sprint is a net buyer or seller of roaming services under such an agreement) and the extent to which (if at all) an increase in roaming rates would impact Sprint's ability to compete in the provision of mobile wireless services.

Cellular South's roaming allegations are, for the most part, unavailing for the same reason. To the extent Cellular South still has a small number of customers who rely on roaming technology compatible with AT&T's and T-Mobile's networks, Cellular South has admitted that it currently has roaming agreements with AT&T. *See* Cellular South Compl. ¶ 67. But it has not

---

[8] Even the academic literature that Plaintiffs cite would require them to allege that "the post-merger firm will be able to *deny* competitors *access* to an important input or customer base, or to raise the cost of access *in a significant and enduring way*" – neither of which is alleged in this case. Jonathan M. Jacobson & Tracy Greer, *Twenty-One Years of Antitrust Injury: Down the Alley with* Brunswick v. Pueblo Bowl-O-Mat, 66 Antitrust L.J. 273, 310-11 (1998) (emphases added).

alleged anything about the terms (including the length) of those agreements or provided any other factual basis for the conclusion that the transaction will affect the terms of future such agreements. In particular, Cellular South does not allege anything about its current roaming costs (including whether they are positive or negative – that is, whether it is a net recipient of roaming revenues) that would provide a basis for the conclusion that hypothetical increases in roaming rates in the future may have a meaningful impact on Cellular South.[9] Particularly in light of the recognized concern that "inventive" claims of injury may serve as a stalking horse for competitors' efforts to interfere with pro-competitive mergers, 2A Phillip E. Areeda et al., *Antitrust Law* ¶ 348d4, at 212 (3d ed. 2007); *see* Defs.' Sprint Mem. 12, the Court should not overlook the failure to plead allegations that are essential to establish even the possibility of harm.

Although neither complaint even acknowledges the FCC's regulation of roaming, let alone attempts to plead a factual basis for a threatened antitrust injury in the face of that regulation, Plaintiffs admit that "the FCC's roaming regulations require all mobile wireless carriers to offer roaming on reasonable terms." Joint Opp. 31.[10] Plaintiffs argue that those

---

[9] Plaintiffs rely on *Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*, No. 97 Civ. 5499(DNE), 2000 WL 264295 (S.D.N.Y. Mar. 9, 2000), *see* Joint Opp. 33, but there the court based standing on the allegation that the merger would prevent the plaintiff "from competing in the relevant market." *Six West*, 2000 WL 264295, at *22; *see also Bon-Ton Stores, Inc. v. May Dep't Stores Co.*, 881 F. Supp. 860, 878 (W.D.N.Y. 1994) (competitor had standing based on "its effective exclusion from the Rochester market"). Plaintiffs make no such allegations of foreclosure here.

[10] Because wireless carriers are under a regulatory obligation to enter into roaming arrangements, Plaintiffs' claims do not resemble a situation where a merged entity might terminate *voluntary* interconnection arrangements following a proposed merger. *Cf.* Joint Opp. 33; U.S. Dep't of Justice & Fed. Trade Comm'n, *Horizontal Merger Guidelines* § 2.2.3 (2010) (suggesting a possible exception to the rule that "[t]he interests of rival firms often diverge from the interests of customers" where "rivals *voluntarily* interconnect with one another" and the merged entity would have a large enough share to pursue "a strategy of ending *voluntary* interconnection") (emphases added).

regulations would not forbid "AT&T and Verizon from raising roaming rates post-merger," *id.*, but they do not explain how a carrier could suffer antitrust injury from paying rates considered reasonable by the FCC. *Cf. Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 412 (2004).[11]

**C. Sprint Fails To Allege That Any Anticompetitive Aspect of the Merger Could Plausibly Cause an Increase in Sprint's Costs for Backhaul**

**1.** Sprint's claim that the merger will harm competition in alleged markets for backhaul services, thereby increasing Sprint's costs to provide wireless services, fails because (as Sprint concedes) T-Mobile is not a supplier of backhaul and its merger with AT&T therefore will not affect concentration in the market. *See* Defs.' Sprint Mem. 12.[12] Sprint's contrary argument reduces to the conclusory assertion that "the elimination of a leading purchaser of alternative backhaul [i.e., T-Mobile] will result in fewer alternative access vendors in backhaul markets, making Sprint more reliant on AT&T (and Verizon) for backhaul and facilitating the ability of AT&T and (Verizon) to raise backhaul rates." Joint Opp. 44; *see id.* at 43 ("The loss of T-Mobile would clearly affect a substantial share of the relevant local markets."). But Sprint fails to plead facts that would support any such alleged impact. Sprint's complaint alleges

---

[11] Seeking to blunt the force of *Trinko,* Plaintiffs cite cases relying on *Trinko*'s conclusion that no antitrust *immunity* existed for claims based on violations of "pre-existing antitrust standards." *Trinko*, 540 U.S. at 406-07; *see* Joint Opp. 31 (citing *Downs v. Insight Communications Co.*, No. 3:09-CV-00093, 2011 WL 1100456, at *5 (W.D. Ky. Mar. 22, 2011); *In re Cox Enters., Inc.*, No. 09-ML-2048-C, 2010 WL 5136047, at *4-*5 (W.D. Okla. Jan. 19, 2010)). But the aspect of *Trinko* that is relevant here is the Supreme Court's separate conclusion that, in applying those "pre-existing antitrust standards," regulation can "significantly diminish[ ] the likelihood of major antitrust harm." *Trinko*, 540 U.S. at 407, 412 (internal quotation marks omitted). Here, the FCC's direct regulation of the very rates that are of alleged concern provides an important reason to require concrete and plausible allegations of likely harm, allegations that the complaints lack.

[12] Despite a fleeting suggestion in Plaintiffs' opposition that the merger will harm "backhaul customers like Sprint *and Cellular South*," Joint Opp. 32-33 (emphasis added), Cellular South's complaint does not allege any facts suggesting that the transaction will have any effect on its access to backhaul. Cellular South's complaint therefore cannot survive dismissal based on any alleged effect of the transaction on supposed markets for backhaul services.

nothing about the suppliers of backhaul services, the relative positions of those suppliers, or the size of T-Mobile's demand relative to other current and anticipated future sources of demand (including Sprint itself). It therefore provides no basis for any plausible inference, as opposed to speculation, that the elimination of T-Mobile's purchases would have a substantial impact on competition. *See* Defs.' Sprint Mem. 13-14, 16-17 (citing cases); *Barton & Pittinos*, 118 F.3d at 182.

Sprint argues that it need not plead such facts, seeking to distinguish the cases cited in Defendants' memoranda because they did not involve § 7 claims. *See* Joint Opp. 42. But those cases address the requirements of antitrust injury and standing, which apply equally to Sprint's Clayton Act claims. *See Cargill*, 479 U.S. at 113. Indeed, in *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007), the Third Circuit sustained the dismissal of a § 16 claim because the plaintiff's theory of harm to itself was "too speculative." *Id.* at 322 (internal quotation marks omitted). Although the *Cargill* Court suggested that injunctive suits under § 16 of the Clayton Act do not entail all of the same risks of duplicative recovery and apportionment of damages that may affect the standing inquiry in suits under § 4 of the Clayton Act, it nevertheless made clear that other aspects of the antitrust standing inquiry – in particular, the requirement of antitrust injury – applied to § 16 claims. *See* 479 U.S. at 110-11 nn.5-6; *Alberta Gas Chems. Ltd. v. E.I. Du Pont de Nemours & Co.*, 826 F.2d 1235, 1240 (3d Cir. 1987) (explaining, in a § 16 case, that "[a] showing of antitrust injury is necessary but not always sufficient to establish antitrust standing" and that "[a] party may have suffered antitrust injury yet not be considered a proper plaintiff for other reasons") (citing *Cargill*). Sprint "must allege threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Cargill*, 479 U.S. at 113 (quoting

*Brunswick*, 429 U.S. at 489). Because it has not alleged a plausible factual basis for the claim that the merger will cause it to pay higher prices for backhaul, Sprint fails to satisfy that requirement.

Two additional factors render Sprint's backhaul theory particularly implausible. First, basic economic principles dictate that a reduction in demand for alternative backhaul services – which Sprint posits would result from the alleged removal of T-Mobile as a purchaser – should lead to *lower* prices for those services. *See* Defs.' Sprint Mem. 15. Sprint's only response is to repeat the conclusory assertion that "the loss of T-Mobile would reduce demand to such an extent that competitive backhaul providers in certain markets would no longer be able to achieve minimum viable scale." Joint Opp. 44. But, again, Sprint's complaint contains no factual allegations explaining how or why competitive backhaul providers might be forced to exit the market – let alone allegations that would render plausible the notion that a reduction in demand would lead to higher prices.

Second, Sprint fails to explain why the FCC's regulation of special access services does not "significantly diminish[ ] the likelihood of major antitrust harm." *Trinko*, 540 U.S. at 412 (internal quotation marks omitted); *cf. City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 268-69 (3d Cir. 1998) (finding no antitrust injury to challenge a merger of two power companies because regulation limiting competition between the firms ensured that "the injury claimed [higher prices] may never occur" and was too "speculative" to bestow standing). Sprint acknowledges that "the provision of backhaul is regulated by the FCC's 'special access' rules," Joint Opp. 7; *see* Sprint Compl. ¶ 58, but argues that such regulation should be ignored because its complaint asserts that the FCC's regulation of special access "has been widely regarded as ineffective at keeping special access rates at competitive levels," Sprint Compl. ¶ 60; *see* Joint

Opp. 43. But Sprint again provides no factual allegations to support, or render plausible, that conclusory assertion. *Cf. NicSand*, 507 F.3d at 451 ("a 'naked assertion' of antitrust injury, the Supreme Court has made clear, is not enough") (quoting *Twombly*, 550 U.S. at 557).

**2.** Sprint also suggests that its backhaul claim is somehow analytically distinct from Plaintiffs' other allegations regarding the transaction's supposed effects on their ability to obtain inputs, describing the claim as "a separate vertical claim for harm to competition in local backhaul markets." Joint Opp. 38; *see also id.* at 5 n.2. Insofar as Sprint means to argue that it has alleged a separate § 7 violation based on the merger's effect on a supposed market for backhaul, its claim is without merit, because this is not a merger of backhaul providers. A threshold aspect of a § 7 claim in this Circuit is that "*the merger* would produce a firm controlling an undue percentage share of the relevant market, and [would] result[ ] in a significant increase in the concentration of firms in that market." *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 715 (D.C. Cir. 2001) (emphasis added; internal quotation marks omitted; brackets in original). But it is undisputed that T-Mobile is not a seller of backhaul. Therefore, the merger will not result in any increase in the concentration of firms in the supposed market for backhaul: the same number of backhaul providers will exist the day after the transaction closes as existed the previous day. *See* Defs.' Sprint Mem. 12. In any event, regardless of how Sprint characterizes its claim, its complaint fails to meet the requirements of antitrust injury and standing.

Sprint, moreover, cites no case in which a private party was held to have standing to challenge a merger on the ground that the transaction would remove a fellow buyer of a product. It relies heavily on *Ford Motor Co. v. United States*, 405 U.S. 562 (1972), but that case was brought by the United States, not a private party, and the primary problem with the transaction in

that case – Ford's acquisition of a manufacturer of spark plugs – was not that it removed Ford as a *buyer* of spark plugs, but that it removed Ford as a potential new *supplier* of spark plugs. *See id.* at 567-71. To the extent the loss of Ford as a buyer might have caused injury, that injury would in any event have been felt directly by competing sellers of spark plugs, not customers. *See id.* at 570.

### D. Plaintiffs' Other Suggestions of Vertical Market Injury Are Too Vague To State a Claim

Finally, Plaintiffs vaguely assert that the merger will harm them by "shift[ing] network development costs to AT&T's rivals," "mak[ing] AT&T and Verizon the gatekeepers of mobile wireless services," and "driv[ing] the wireless service industry back toward duopoly." Joint Opp. 33-35. But the complaints contain no factual allegations that would render any of those conclusory assertions plausible. *See, e.g., Twombly*, 550 U.S. at 570 (dismissal is required when complaint fails to plead "enough facts to state a claim . . . that is plausible on its face").

## CONCLUSION

The Court should dismiss Plaintiffs' complaints for lack of antitrust standing.

Dated: October 13, 2011

Respectfully submitted,

/s/ *Mark C. Hansen*

Mark C. Hansen, D.C. Bar # 425930
Michael K. Kellogg, D.C. Bar # 372049
Aaron M. Panner, D.C. Bar # 453608
Kellogg, Huber, Hansen, Todd,
Evans & Figel, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036
(202) 326-7900

Richard L. Rosen, D.C. Bar # 307231
Donna E. Patterson, D.C. Bar # 358701
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
(202) 942-5000

Wm. Randolph Smith, D.C. Bar # 356402
Kathryn D. Kirmayer, D.C. Bar # 424699
Crowell & Moring, LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2500

*Counsel for AT&T Inc.*

George S. Cary, D.C. Bar # 285411
Mark W. Nelson, D.C. Bar # 442461
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500

Richard G. Parker, D.C. Bar # 327544
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300

*Counsel for T-Mobile USA, Inc. and Deutsche Telekom AG*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 13, 2011, I caused the foregoing Reply Memorandum in Support of Defendants' Motions To Dismiss the Complaints of Sprint and Cellular South to be filed using the Court's CM/ECF system, which will send e-mail notification of such filings to counsel of record. This document is available for viewing and downloading on the CM/ECF system.

/s/ *Mark C. Hansen*
Mark C. Hansen